IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| JACKIE ROBERTS and DELORIS ROBERTS ) | | |
| as Co-Administrators of the Estate of ) | | |
| Askari Jari Roberts; SUREROME HUNTER, ) | | |
| as mother and natural guardian of ) | | |
| Ja'Juan Hunter, a minor; and SHAUNDRIKA ) | | |
| ADAMS, as mother and natural guardian of ) | | |
| AMIYA ADAMS, a minor, ) | | |
| ) | **CIVIL ACTION FILE** | |
| **Plaintiffs,** ) | | |
| ) | | |
| v. ) | **NO.** _____ | |
| ) | | |
| ) | | |
| FLOYD COUNTY, GEORGIA, a political ) | | |
| subdivision of the State of Georgia; ) | **JURY TRIAL** | |
| SGT. GREGORY BECK, individually, and in ) | **DEMANDED** | |
| his capacity as a Sergeant in the Floyd County ) | | |
| Police Department; and SGT. BRANDON ) | | |
| ROBINSON, individually, and in his capacity ) | | |
| as a Sergeant in the Floyd County Police ) | | |
| Department, ) | | |
| ) | | |
| **Defendants.** ) | | |

## COMPLAINT FOR DAMAGES

COME NOW, Plaintiffs JACKIE ROBERTS and DELORIS ROBERTS, as

Co-Administrators of the Estate of Askari Jari Roberts; SUREROME HUNTER,

as mother and natural guardian of Ja'Juan Hunter, a minor; and SHAUNDRIKA

ADAMS, as mother and natural guardian of AMIYA ADAMS, a minor, and for

their First Amended Complaint for Damages against FLOYD COUNTY,

GEORGIA, a political subdivision of the State of Georgia; SGT. GREGORY

BECK, individually, and in his capacity as a Sergeant in the Floyd County

Police Department; and SGT. BRANDON ROBINSON, individually, and in his

capacity as a Sergeant in the Floyd County Police Department, show this

Honorable Court as follows:

## JURISDICTION and VENUE

1.    Plaintiff brings this federal action under 42 U. S. C. §1983 and §1988.

       Federal Jurisdiction is invoked pursuant to 28 U.S.C. §1331 and §1343.

       The Court's Pendent jurisdiction is invoked pursuant to 28 USC §1367(a).

2.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)

       inasmuch as Plaintiffs' causes of action arose in the Northern District of

       Georgia, and all the Defendants are found in the Northern District of

       Georgia.

## THE PARTIES

3.    Plaintiff is the ESTATE OF ASKARI JARI ROBERTS, by JACKIE

ROBERTS and DELORIS ROBERTS, as co-Administrators of the Estate of Askari Jari Roberts, said decedent's natural parents, pursuant to O.C.G.A. § 51-4-1, *et seq.* (Wrongful Death and Survival).   Co-Administrator Jackie Roberts resides at 3189 Morton Bend Road, SW, in Rome, Georgia, 30161, while co-Administrator Deloris Roberts resides at 8A Ellison Street NW, Rome, Georgia, 30165.

4.    The ESTATE OF ASKARI JARI ROBERTS, by JACKIE ROBERTS and DELORIS ROBERTS, resides at 3189 Morton Bend Road, SW, Rome, Georgia, 30161.

5.    Jackie Roberts and Deloris Roberts were appointed co-Administrators by the Floyd County Probate Court on the 11th day of July, 2016, under Estate No.   16E26815.

6.    The Plaintiff Estate's Decedent is Askari Jari Roberts, who died on March 18, 2015 as the result of having been subjected repeatedly to an electronic control device (hereinafter "stun gun") by Floyd County Police Sergeants Gregory Beck and Brandon Robinson in the decedent's father's home at 3189 Morton Bend Road in Rome, Georgia 30161.   Decedent Askari Roberts is survived by his father, Jackie Roberts, his mother, Deloris

Roberts, a son, JaJuan Hunter, a minor, and a daughter, Amiya Adams, a minor.

7.  Plaintiff is JA'JUAN HUNTER, a minor, by and through his mother and natural guardian, Surerome Denise Hunter, who resides at 306 Myrtle Street, Apartment A, Rome, Georgia, 30161.

8.  Plaintiff is AMIYA ADAMS, a minor, by and through her mother and natural guardian, Shaundrika Adams, who resides at 32 Fortune Street, Rome, Georgia, 30161

9.  Plaintiff Estate brings its present federal actions and pendent state court action for Survivor damages under and by virtue of the Georgia Wrongful Death and Survivor Statutes, O.C.G.A. § 51-4-1, *et seq.*, to recover damages legally appropriate thereunder, including damages for Askari Jari Roberts' pain and suffering before death, any medical and hospital expenses incurred before death, funeral expenses and punitive damages.

10. Individual Plaintiffs bring their pendent state court action for Wrongful Death under and by virtue of the Georgia Wrongful Death and Survivor Statutes, O.C.G.A. § 51-4-1, *et seq.* to recover damages for the full value of te decedent's life and all damages legally appropriate thereunder, including,

damages for the full value of Askari Roberts' life including, but not limited to, damages for loss of support and contribution which the family would have received from Askari Jari Roberts from the time of his death for the duration of his work life expectancy; compensation for the pecuniary value of the services, society and comfort he would have given to his son had he lived; and also for the net amount of money Askari Jari Roberts would have earned from the date of his death and would have earned between that date and the end of his life work expectancy.

11.    Plaintiffs' decedent, Askari Jari Roberts, did not bring an action during his lifetime for actual injuries or damages sought here.

12.    Defendant FLOYD COUNTY, GEORGIA (hereinafter "FLOYD COUNTY") is a political subdivision of the state of Georgia.   Floyd County, Georgia, owns, operates, manages and directs the FLOYD COUNTY POLICE (hereinafter "FLOYD COUNTY POLICE") as an Administrative organ, arm and Department of FLOYD COUNTY which, in turn, employs the below-described Defendants.   The FLOYD COUNTY POLICE is responsible for providing police, law enforcement and life-saving services for Defendant FLOYD COUNTY and for investigating

crimes that occur in Floyd County, Georgia.   Defendant FLOYD COUNTY has principal offices at 12 East 4th Avenue, Suite 210, Rome, Georgia, 30161.

13.    A defendant is Sgt. Gregory Beck (hereinafter "Sgt.   Beck"), an adult male and Supervisory employee of the Floyd County Police Department, who has a main office located at 5 Government Plaza, 2nd Floor, Rome, Georgia, 30161.   At all times relevant hereto, Defendant Beck was acting under color of law, in the course and scope of his supervisory duties and authority as a Floyd County Police sergeant, under the authority vested in him by Defendant Floyd County, and in furtherance of Defendant Floyd County's business and political purpose.

14.    A defendant is Sgt. Brandon Robinson (hereinafter "Sgt.   Beck"), an adult male and Supervisory employee of the Floyd County Police Department, who has a main office located at 5 Government Plaza, 2nd Floor, Rome, Georgia, 30161.   At all times relevant hereto, Defendant Robinson was acting under color of law, in the course and scope of his supervisory duties and authority as a Floyd County Police sergeant, under the authority vested in him by Defendant Floyd County, and in furtherance of Defendant Floyd

County's business and political purpose.

15.   Because Defendants Beck and Robinson were both Supervisory police officers, their acts and failures to act were the direct acts and failures to act of Defendant Floyd County, and Defendant Floyd County is both directly and indirectly liable and responsible for the acts and failures to act of its Supervisory officers, Defendants Beck and Robinson.

16.   Because Defendants Beck and Robinson, as individuals, deliberately and intentionally inflicted unnecessary pain and suffering upon Askari Roberts, their conduct as individuals warrants the granting of punitive damages against them.

## **STUN GUNS/TASERS**

17.   According to Wikipedia, an internet encyclopedia:

A Taser or conducted electrical weapon (CEW) is an electroshock weapon sold by Taser International. It fires two small dart-like electrodes, which stay connected to the main unit by conductors, to deliver electric current to disrupt voluntary control of muscles causing "neuromuscular incapacitation". Someone struck by a Taser experiences stimulation of sensory nerves and motor nerves, resulting in strong involuntary muscle contractions. Tasers do not rely on pain compliance, except when used in "Drive Stun" mode, and are thus preferred by some law enforcement over non-Taser stun guns and other electronic control weapons.
https://en.wikipedia.org/wiki/Taser

18. A Taser is a trade name that is used generically and is also called a "stun gun".

19. Also according to Wikipedia, with respect to "Drive Stun":

    Some Taser models, particularly those used by police departments, also have a "Drive Stun" capability, where the Taser is held against the target without firing the projectiles, and is intended to cause pain without incapacitating the target. "Drive Stun" is "the process of using the EMD (Electro Muscular Disruption) weapon [Taser] as a pain compliance technique. This is done by activating the Taser and placing it against an individual's body."    https://en.wikipedia.org/wiki/Taser

20. Thus, the "Drive Stun" mode is designed specifically to cause pain and suffering.

21. Guidelines released in 2011 by the United States Department of Justice's Community Oriented Policing Services ("COPS") and the Police Executive Research Forum recommend that use of Drive Stun as a pain compliance technique be avoided in the United States.

## FLOYD COUNTY AND ITS OFFICERS

22. Floyd County, Georgia equipped and provided its officers, including Defendants Beck and Robinson, with stun guns capable of delivering strong, potentially lethal electric current to targeted persons.

23. According to the National Institute of Justice, in police work, a Use of Force

Continuum instructs officers to respond to any given situation with a level of force appropriate to the situation at hand, and usually reflects five levels of force: 1)   Officer Presence (where no force is used; considered the best way to resolve a situation); 2) Verbalization (force is non-physical); 3) Empty-Hand Control (where officers use bodily force to gain control of a situation; sometimes called pressure point control where pressure is applied to certain parts of the body; officers use grabs, holds and joint locks and/or punches and kicks to restrain an individual); 4)   Less-Lethal Methods (where officers use less-lethal technologies such as batons, pepper sprays or stun guns to gain control of a situation); and finally 5) Lethal Force (where officers use lethal weapons to gain control of a situation). http://www.nij.gov/topics/law-enforcement/officer-safety/use-of-force/pages/continuum.aspx.

24.    When improperly or over used, a stun gun can be a lethal weapon.

25.    As of March 2015, Defendant Floyd County knew that its officers were often required to physically subdue unarmed persons suspected of being under the influence of drugs and/or mentally impaired, but did not provide its police officers any guidance or directives regarding whether, or under

what circumstances, it was proper to use electrical control devices ("stun guns") to subdue unarmed persons who appeared mentally impaired and/or under the influence of alcohol or drugs, or how properly and effectively to administer such life-saving techniques as CPR.

26.    As of March 2015, Defendant Floyd County, by and through its numerous training officers and supervisors, failed to adequately and properly train, educate or supervise Floyd County police officers as to when, or under what circumstances it was proper to use stun guns to subdue unarmed persons who appeared mentally impaired and/or under the influence of alcohol or drugs.

27.    As a result, Defendant Floyd County was deliberately indifferent to the rights of individuals who may have been mentally impaired or under the influence of alcohol or drugs, to be free from the misuse of stun guns and free from the use of excessive or unreasonable force in apprehending or subduing them.

28.    Because Defendant Floyd County failed to enact sound policies, or provide training and guidelines to direct its officers in the proper use of stun guns, Defendants Beck and Robinson overused and misused their stun guns to

10

cause the death of the Plaintiffs' decedent, Askari Roberts.

29. The Defendants' individual and joint acts and failures to act, as described herein, deprived the Plaintiffs' decedent, Askari Roberts, of his Fourth Amendment rights to be free from the use by police of unreasonable and excessive force in apprehending or subduing him, and of his Fourteenth Amendment rights to be free from unreasonable and excessive force that amounted to punishment without due process of law.

## OPERATIVE ALLEGATIONS

30. On or about the evening of Tuesday March 17, 2015, Askari Roberts visited his father and step-mother's home at 3189 Morton Bend Road in Rome, Georgia to advise his father, Jackie Roberts, and his father's wife, Ella Roberts, (hereinafter his "parents") that someone was planning to kill him.

31. Unbeknownst to his parents, Askari Roberts was under the influence of methamphetamine drugs, and his belief that someone was planning to kill him was but a delusion.

32. Genuinely believing that someone was planning to kill him, however, Askari Roberts became increasingly agitated and his parents began to feel physically menaced and threatened.

33.  At or around 9:30 P. M. on the evening of March 17, 2015, Askari Roberts'
parents felt so menaced and threatened that his father, Jackie, wrestled him
to the ground and physically restrained him.

34.  As her husband was restraining her step-son, Ella Roberts telephoned the
Floyd County Police to tell them that her step-son was being held down by
his father to keep him from menacing and threatening them.

35.  Approximately twenty minutes after Mrs. Roberts telephoned the police,
Defendants Beck and Robinson arrived, first one, then the other, just a few
minutes apart.

36.  When Defendants Beck and Robinson arrived, they found Askari Roberts
lying on the ground, unarmed and restrained only by his father, who had
restrained his son single-handedly for over 20 minutes.

37.  Immediately after arriving at the Roberts home, Defendants Beck and
Robinson together then relieved Mr. Roberts and began trying to handcuff
the decedent.

38.  In their efforts to relieve Mr. Roberts, neither Defendant Beck nor Robinson
made any meaningful effort to talk to Askari Roberts, but both began
immediately trying to Drive Stun him in order to handcuff him.

39.  When Askari Roberts felt that he was being handcuffed, he then tried to physically resist the officers.

40.  When Askari Roberts began to physically resist the officers, neither officer made any meaningful effort to talk to him and calm him down.

41.  Furthermore, where Askari Roberts was being restrained by one individual when Defendants Beck and Robinson arrived, the two officers could have physically restrained Askari Roberts long enough to handcuff him.

42.  After one handcuff was placed successfully on one of Askari Roberts' wrists and he was partially subdued, the two officers could have further subdued Askari Roberts so as to place the second handcuff on him.

43.  Rather than make any meaningful effort to talk to Askari Roberts, and rather than further subduing and simply restraining him so as to attach the second handcuff, Defendants Beck and Robinson and used their stun guns to deliver strong, sustained "stun drive" electrical shocks directly to Askari Roberts' upper torso and body while holding him forcibly to the ground.

44.  More specifically, Defendants Beck and Roberts delivered repeated, multiple and sustained electrical shocks using the "stun drive" method directly against Askari Roberts' body and while they were holding him to

the ground.

45.     When delivering said "stun drive" electrical shocks to Askari Roberts,

Defendants knew that their efforts would cause Askari Roberts great pain.

46.     Defendants Beck and Robinson delivered multiple, sustained "stun drive"

shock to Askari Roberts, not for the purpose of subduing him, but also for

the deliberate purpose of causing him extreme pain as punishment for

resisting the officers' efforts to handcuff him.

47.     As a direct and proximate result of being subjected to repeated, multiple and

sustained "stun drive" electrical shocks, Askari Roberts lost consciousness.

48.     Defendants Beck and Robinson thereafter negligently attempted to

administer cardio-pulmonary resuscitation (CPR) to Askari Roberts, to no

avail.

49.     Defendants Beck and Robinson's efforts to resuscitate Askari were

unsuccessful because they had been negligently trained on what to do

should a suspect lose consciousness.

50.     Thereafter, Askari Roberts was transported to a local hospital where efforts

to revive him were unsuccessful, and he died at approximately 12:36 AM on

the morning of Wednesday March 18, 2015.

51.    But for Defendants Beck and Robinson's delivery of multiple sustained

"stun drive" electrical shocks, Askari Roberts would not have died.

## FEDERAL CLAIMS

## COUNT I

**ESTATE OF ASKARI JARI ROBERTS v. DEFENDANT FLOYD COUNTY,
GEORGIA**
**(Violation of 42 U. S. C. §1983; Deprivation of 4th Amendment Rights)**

52.    The Allegations contained in all preceding Paragraphs are here incorporated

and included by reference as if fully set forth here.

53.    By failing to properly instruct Defendants Beck and Robinson in the proper

use of electronic control devices, Defendant FLOYD COUNTY allowed and

enabled Defendants Beck to misuse, improperly use and over use an

electrical control device to subdue Askari Roberts in an objectively

unreasonable manner.

54.    The acts and failures to act of Defendants FLOYD COUNTY, GEORGIA,

which acted or failed to act with under color of law with deliberate

indifference to Askari Jari Roberts' rights, as described herein, caused the

Plaintiff's decedent   to be subjected to the deprivation of his rights,

privileges or immunities as guaranteed him under the Fourth Amendment to

the United States Constitution, specifically his right to be secure in his

physical person and to be free from unnecessary violence and excessive use

of force.

55.    The acts and failures to act of Defendant FLOYD COUNTY, GEORGIA,

were proscribed by 42 U. S. C. §1983.

    **WHEREFORE**, the Plaintiff demands judgment against Defendant

FLOYD COUNTY, GEORGIA in an amount in excess of One Hundred Fifty

Thousand Dollars ($150,000.00), and for reasonable attorneys fees as allowed by

42 U. S. C. §1988.

## COUNT II

**ESTATE OF ASKARI JARI ROBERTS v. DEFENDANTS BECK AND
ROBINSON, Individually and/or jointly
(Violation of 42 U. S. C. §1983; Deprivation of 4th Amendment Rights)**

56.    The Allegations contained in all preceding Paragraphs are here incorporated

and included by reference as if fully set forth here.

57.    The acts and failures to act of Defendants Beck and Robinson, individually

and/or jointly, who acted or failed to act with deliberate indifference, as

described herein, under color of law, to the decedent's rights to be free from

the use of excessive force in subduing him, caused the Plaintiffs' decedent

16

to be subjected to objectively unreasonable force in the deprivation of his rights, privileges or immunities as guaranteed him under the Fourth Amendment to the United States Constitution, specifically his right to be secure in his physical person and to be free from unnecessary violence and excessive use of force as described herein.

58.    The acts and failures to act of Defendants Beck and Robinson were proscribed by 42 U. S. C. §1983.

59.    Because Defendants Beck and Robinson, as individuals, deliberately and intentionally inflicted unnecessary pain and suffering upon Askari Roberts, their conduct as individuals warrants the granting of punitive damages against them.

**WHEREFORE**, the Plaintiff demands judgment against Defendants Beck and Robinson in an amount in excess of One Hundred Fifty Thousand Dollars ($150,000.00), and for reasonable attorneys fees as allowed by 42 U. S. C. §1988.

## <u>COUNT III</u>

**ESTATE OF ASKARI JARI ROBERTS   v. DEFENDANT FLOYD COUNTY, GEORGIA**
**(Violation of 42 U. S. C. §1983; Deprivation of 8th and 14th Amendment Rights)**

17

60. The Allegations contained in all preceding Paragraphs are here incorporated and included by reference as if fully set forth here.

61. By failing to properly instruct Defendants Beck and Robinson in the proper use of electronic control devices, Defendant FLOYD County allowed and enabled Defendants Beck to misuse, improperly use and over use an electrical control device to punish Askari Roberts without Due Process of Law.

62. The acts and failures to act of Defendants FLOYD COUNTY, GEORGIA, which acted or failed to act with under color of law with deliberate indifference to Askari Jari Roberts' rights, as described herein, caused the Plaintiff's decedent to be subjected to the deprivation of his rights, privileges or immunities, specifically his right to Due Process of Law, as guaranteed him under the Fourteenth Amendment to the United States Constitution, specifically his right to be free from punishment without Due Process of Law, and his right to be free from cruel and unusual punishment.

63. The acts and failures to act of Defendant FLOYD COUNTY, GEORGIA, were proscribed by 42 U. S. C. §1983.

WHEREFORE, the Plaintiff demands judgment against Defendant

FLOYD COUNTY, GEORGIA in an amount in excess of One Hundred Fifty

Thousand Dollars ($150,000.00), and for reasonable attorneys fees as allowed by

42 U. S. C. §1988.

## COUNT IV

**ESTATE OF ASKARI JARI ROBERTS v. DEFENDANTS BECK AND ROBINSON, Individually and/or jointly**
**(Violation of 42 U. S. C. §1983; Deprivation of 8th and 14th Amendment Rights)**

64.    The Allegations contained in all preceding Paragraphs are here incorporated

and included by reference as if fully set forth here.

65.    The acts and failures to act of Defendants Beck and Robinson, individually

and/or jointly, who acted or failed to act with deliberate indifference, as

described herein, under color of law, to the decedent's rights to be free from

pre-trial punishment, caused the Plaintiffs' decedent   to be punished

without due process of law and deprived of his rights, privileges or

immunities, specifically his Due Process rights, as guaranteed him under the

Fourteenth Amendment to the United States Constitution, specifically his

right to be secure in his physical person and to be free from punishment

without Due Process of Law, and his right to be free from cruel and unusual

punishment.

66.   The acts and failures to act of Defendants Beck and Robinson were

proscribed by 42 U. S. C. §1983.

67.   Because Defendants Beck and Robinson, as individuals, deliberately and

intentionally inflicted unnecessary pain and suffering upon Askari Roberts,

their conduct as individuals warrants the granting of punitive damages

against them.

**WHEREFORE**, the Plaintiff demands judgment against Defendants Beck

and Robinson in an amount in excess of One Hundred Fifty Thousand Dollars

($150,000.00), and for reasonable attorneys fees as allowed by 42 U. S. C. §1988.

## STATE LAW CLAIMS

## COUNT V:

**Plaintiffs JAJUAN HUNTER and AMIYA ADAMS, a minors, by and
Through Their Parents and Natural Guardians -v- Defendants FLOYD
COUNTY, BECK and ROBINSON
(Wrongful Death)**

68.   The Allegations contained in all preceding Paragraphs are here incorporated

and included by reference as if fully set forth here.

69.   Decedent's sole survivors are his minor son, JaJuan Hunter, and his minor

20

daughter, Amiya Adams, who are entitled to recover damages as described herein for the full value of Askari Roberts' life, and on whose behalf this Wrongful Death action is brought pursuant to the Georgia Wrongful Death Act, Title 51 Georgia Code, §4-1 et seq.

70.   Decedent's death was caused by the intentional, negligent, grossly negligent, unreasonable, wanton and deliberately indifferent conduct of Defendant FLOYD COUNTY in failing to adequately train, educate and supervise police officers, including Defendants BECK and ROBINSON, in the proper manner of using electronic control devices and in life-saving techniques, which in turn allowed and caused Defendants BECK and ROBINSON to subject Askari Robinson to unreasonable, excessive and lethal force while trying to subdue and/or punish him.

71.   As described above, Defendants BECK and ROBINSON acted unlawfully, wantonly, unreasonably, maliciously, unnecessarily and/or with deliberate and reckless indifference to the health and welfare of the decedent, and for which Defendant FLOYD COUNTY is directly and vicariously liable.

72.   As described above, Defendants BECK and ROBINSON, and therefore Defendant FLOYD COUNTY, acted unlawfully, wantonly, unreasonably,

maliciously, unnecessarily and/or with deliberate and reckless indifference to the health and welfare of Askari Jari Roberts, who was adversely affected by police officers untrained and uneducated in the proper manner of using electronic control devices in apprehending or subduing him and in applying life-saving techniques.

73.   As a direct and proximate result of defendants' individual and joint actions, decedent ASKARI JARI ROBERTS, was unnecessarily caused extreme physical pain, mental anguish and suffering, and death, and was deprived of the enjoyment and pleasure of life.

74.   As a further direct and proximate result of defendants' individual and joint actions, decedent's survivors have suffered serious emotional pain and economic loss due to the wrongful death of their son and father, Askari Jari Roberts.

75.   As a direct and proximate result of defendants' individual and joint actions, decedent's survivors are entitled to recover damages for the full value of Askari Jari Roberts' life, including, but not limited to :

(a)     the loss of the value of decedent's services;

(b)     loss of decedent's comfort and society;

     (c)     contributions decedent would have made to the plaintiffs from his labor;

     (d)     all damages recoverable under the statute.

**WHEREFORE**, Plaintiffs demand judgment in their favor and against Defendants FLOYD COUNTY, BECK and ROBINSON, individually and/or jointly, and request compensatory damages, punitive damages, reasonable attorneys fees and costs in a sum in excess of One Hundred Fifty Thousand Dollars ($150,000).

## COUNT IV:

### Estate of ASKARI JARI ROBERTS -v- Defendants FLOYD COUNTY, BECK and ROBINSON
### (Survival Action)

76.    The Allegations contained in all preceding Paragraphs are here incorporated and included by reference as if fully set forth here.

77.    As a direct and proximate result of the Defendants' individual and joint actions as described herein, ASKARI JARI ROBERTS suffered grievous bodily injury, and mental and physical pain and suffering, and death.

78.    On behalf of the Estate of Askari Jari Roberts, Jackie and Deloris Roberts, co-Administrators of the Decedent's Estate, bring this action under the

23

Georgia Wrongful Death Act, O.C.G.A. §51-4-1, *et seq.,* and claims for

ASKARI JARI ROBERTS' Estate compensation for all damages suffered

by ASKARI JARI ROBERTS as described herein and recoverable under the

statute by reason of the grievous bodily injury, mental and physical pain and

suffering caused him by the Defendants, individually and jointly, as

described above.

79.    Because Defendants Beck and Robinson, as individuals, deliberately and

intentionally inflicted unnecessary pain and suffering upon Askari Roberts,

their conduct as individuals warrants the granting of punitive damages

against them.

**WHEREFORE**, the Estate of ASKARI JARI ROBERTS demands

judgment in its favor and against Defendants FLOYD COUNTY, BECK and

ROBINSON, individually and jointly, and requests compensatory damages,

punitive damages, inclusive of interest and reasonable attorney's fees and costs in

a sum in excess of One Hundred Fifty Thousand Dollars ($150,000).

Respectfully submitted,

COX, BYINGTON,
TWYMAN & JOHNSON, LLP


By:    */s/ Christopher P. Twyman*
       CHRISTOPHER P. TWYMAN
       Georgia Bar No.   720660
       Attorney for the Plaintiff

711 Broad Street
Rome, Georgia 30161
(706) 291-2002 Office
(706) 291-6242 Facsimile

Michael Earl Davis, Esquire
Pennsylvania Attorney I.D. No. 64714
8 North Preston Street
Philadelphia, PA 19104
(571) 340-8243
*Pro Hac Vice Application Pending*

25