## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

JACKIE ROBERTS,
as Co-Administrator of the
Estate of Askari Jari Roberts,
et al.,

     Plaintiffs,

v.

FLOYD COUNTY, GEORGIA, et al.,

     Defendants.

CIVIL ACTION FILE NO.:
4:17-CV-0053-HLM

## ORDER

This case is before the Court on the Motion to Dismiss
for Failure to State a Claim ("Motion to Dismiss") filed by
Defendant Floyd County, Georgia ("Defendant Floyd
County") [11].

AO 72A
(Rev.8/8
2)

## I.    Standard Governing a Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) allows the Court to dismiss a complaint, or portions of a complaint, for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).    When reviewing a motion to dismiss, the Court must take the allegations of the complaint as true and must construe those allegations in the light most favorable to the plaintiff.  Alvarez v. Att'y Gen. for Fla.,  679 F.3d 1257, 1261 (11th Cir. 2012).

Although a court is required to accept well-pleaded facts as true when evaluating a motion to dismiss, it is not required to accept the plaintiff's legal conclusions. Chandler v. Sec'y of Fla. Dep't of Transp., 695 F.3d 1194, 1199 (11th Cir. 2012) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678

AO 72A
(Rev.8/8
2)

(2009)). The Court also does not accept as true "unwarranted deductions of fact or legal conclusions masquerading as facts." <u>Snow v. DirecTV, Inc.</u>, 450 F.3d 1314, 1320 (11th Cir. 2006) (internal quotation marks and citation omitted).

Finally, the Court may dismiss a complaint if it does not plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Simpson v. Sanderson Farms, Inc.</u>, 744 F.3d 702, 708 (11th Cir. 2014) (internal quotation marks omitted) (quoting <u>Iqbal</u>, 556 U.S. at 678). In <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), the Supreme Court observed that a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

3

550 U.S. at 555.  Although factual allegations in a complaint need not be detailed, those allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Id.   Moreover, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.  The mere possibility that the defendant might have acted unlawfully is not sufficient to allow a claim to survive a motion to dismiss.  Id.   Instead, the well-pleaded allegations of the complaint must move the claim "across the line from conceivable to plausible."  Twombly, 550 U.S. at 570.

4

AO 72A
(Rev.8/8
2)

## II.    Background

### A.    Plaintiffs' Allegations[1]

#### 1.    The Parties

Plaintiffs Jackie Roberts and Deloris Roberts are the Co-Administrators of the Estate of Askari Jari Roberts, and they reside in Rome, Georgia. (Compl. (Docket Entry No. 1) ¶¶ 3-5.) Askari Jari Roberts (the "Decedent") died on March 18, 2015, allegedly "as the result of having been subjected repeatedly to an electronic control device" by Defendants Gregory Beck ("Defendant Beck") and

---

[1]The Court considers only the allegations of the Complaint and disregards any factual contentions that Plaintiffs make in their brief in response to the Motion to Dismiss. A party may not amend a complaint via arguments in a response to a motion to dismiss. Wilchombe v. TeeVee Toons, Inc., 555 F.3d 949, 959 (11th Cir. 2009); Payne v. Ryder Sys., Inc. Long Term Disability Plan, 173 F.R.D. 537, 540 (M.D. Fla. May 30, 1997).

AO 72A
(Rev.8/8

Defendant Brandon Robinson ("Defendant Robinson"). (<u>Id.</u> ¶ 6.) Plaintiff Jackie Roberts is the Decedent's father, while Plaintiff Deloris Roberts is his mother. (<u>Id.</u>) Plaintiff Ja'Juan Hunter is the decedent's minor son, and brings this action by and through his mother and natural guardian, Plaintiff Surerome Denise Hunter. (<u>Id.</u> ¶¶ 6-7.) Plaintiff Amiya Adams is the decedent's minor daughter, and brings this action by and through her mother and natural guardian, Shaundrika Adams. (<u>Id.</u> ¶¶ 6, 8.)

Defendant Floyd County is a political subdivision of the State of Georgia, and Plaintiffs allege that it operates, manages, and directs the Floyd County Police Department (the "FCPD"). (Compl. ¶ 12.) Defendant Beck is a sergeant

6

with the FCPD.  (Id. ¶ 13.)  Defendant Robinson also is a

sergeant with the FCPD.  (Id. ¶ 14.)

### 2.  Tasers and Use of Force

Plaintiffs have included several allegations concerning

electronic stun guns operated under the trade name

"Taser."  (Compl. ¶¶ 17-21.)  Plaintiffs allege that many

Tasers have a "Drive Stun" mode, which "is designed

specifically to cause pain and suffering," and that certain

guidelines "recommend that use of Drive Stun as a pain

compliance technique be avoided in the United States." (Id.

¶¶ 19-21.)

Plaintiffs allege that Defendant Floyd County equipped

its officers, including Defendants Beck and Robinson, "with

stun guns capable of delivering strong, potentially lethal

7

electric current to targeted persons." (Compl. ¶ 22.) Plaintiffs assert that guidelines for police officers have promulgated a use of force continuum in which lethal force is to be the last resort. (Id. ¶ 23.) According to Plaintiffs, "[w]hen improperly or over used, a stun gun can be a lethal weapon." (Id. ¶ 24.)

Plaintiffs allege:

25. As of March 2015, Defendant Floyd County knew that its officers were often required to physically subdue unarmed persons suspected of being under the influence of drugs and/or mentally impaired, but did not provide its police officers any guidance or directives regarding whether, or under what circumstances, it was proper to use [stun guns] to subdue unarmed persons who appeared mentally impaired and/or under the influence of alcohol or drugs, or how properly and effectively to administer such life-saving techniques as CPR.

8

26. As of March 2015, Defendant Floyd County, by and through its numerous training officers and supervisors, failed to adequately and properly train, educate or supervise [FCPD] officers as to when, or under what circumstances it was proper to use stun guns to subdue unarmed persons who appeared mentally impaired and/or under the influence of alcohol or drugs.

27. As a result, Defendant Floyd County was deliberately indifferent to the rights of individuals who may have been mentally impaired or under the influence of alcohol or drugs, to be free from the misuse of stun guns and free from the use of excessive or unreasonable force in apprehending or subduing them.

28. Because Defendant Floyd County failed to enact sound policies, or provide training and guidelines to direct its officers in the proper use of stun guns, Defendants Beck and Robinson overused and misused their stun guns to cause the death of [the Decedent].

29. [Defendants'] individual and joint acts and failures to act . . . deprived [the Decedent] of

9

his Fourth Amendment rights to be free from the use by police of unreasonable and excessive force in apprehending or subduing him, and of his Fourteenth Amendment rights to be free from unreasonable and excessive force that amounted to punishment without due process of law.

(Id. ¶¶ 25-29.)

### 3.   Events Giving Rise to this Lawsuit

On or about March 17, 2015, the Decedent visited the home of Plaintiff Jackie Roberts and the Decedent's stepmother, Ella Roberts (the "Decedent's parents"), to advise them that someone was planning to kill him. (Compl. ¶ 30.)   The Decedent's parents were unaware that the Decedent was under the influence of methamphetamine and delusional.  (Id. ¶ 31.)  The Decedent, who genuinely believed that someone was planning to kill him, became

10

increasingly agitated, and the Decedent's parents began to feel physically menaced and threatened.  (Id. ¶ 32.)  At approximately 9:30 p.m., the Decedent's parents felt so menaced and threatened that Plaintiff Jackie Roberts wrestled the Decedent to the ground and physically restrained him.  (Id. ¶ 33.)  As Plaintiff Jackie Roberts restrained the Decedent, Ella Roberts telephoned the FCPD to advise that Plaintiff Jackie Roberts was holding down the Decedent to keep the Decedent from menacing and threatening them.  (Id. ¶ 34.)

Approximately twenty minutes later, Defendants Beck and Robinson arrived, with one following the other a few minutes later.  (Compl. ¶ 35.)  When Defendants Beck and Robinson arrived, they found the Decedent lying on the

AO 72A

(Rev.8/8
2)

ground, unarmed and restrained by Plaintiff Jackie Roberts, who had restrained the Decedent single-handedly for more than twenty minutes. (Id. ¶ 36.) Defendants Beck and Robinson relieved Plaintiff Jackie Roberts and began trying to handcuff the Decedent. (Id. ¶ 37.) According to Plaintiffs, Defendants Beck and Robinson never "made any meaningful effort to talk to" the Decedent, but instead "immediately tr[ied] to Drive Stun him in order to handcuff him." (Id. ¶ 38.)

When the Decedent felt that he was being handcuffed, he tried to resist the officers physically. (Compl. ¶ 39.) When the Decedent began to resist, "neither officer made any meaningful effort to talk to him and calm him down." (Id. ¶ 40.) Plaintiffs allege that "the two officers could have

12

physically restrained [the Decedent] long enough to handcuff him." (Id. ¶ 41.) According to Plaintiffs, after the officers placed one handcuff on one of the Decedent's wrists and partially subdued him, the officers "could have further subdued [the Decedent] so as to place the second handcuff on him." (Id. ¶ 42.) Plaintiffs allege that, "[r]ather than make any meaningful effort to talk to [the Decedent], and rather than further subduing and simply restraining him so as to attach the second handcuff, Defendants Beck and Robinson . . . used their stun guns to deliver strong, sustained 'stun drive' electrical shocks directly to [the Decedent's] upper torso and body while holding him forcibly to the ground." (Id. ¶ 43.) According to Plaintiffs, "Defendants Beck and [Robinson] delivered repeated,

13

multiple and sustained electrical shocks using the 'stun drive' method directly against [the Decedent's] body and while they were holding him to the ground." (Id. ¶ 44.)

Plaintiffs allege that, when Defendants Beck and Robinson used their stun guns in this manner, they "knew that their efforts would cause [the Decedent] great pain." (Compl. ¶ 45.) According to Plaintiffs, "Defendants Beck and Robinson delivered multiple, sustained 'stun drive' shock[s] to [the Decedent], not for the purpose of subduing him, but also for the deliberate purpose of causing him extreme pain as punishment for resisting the officers' efforts to handcuff him." (Id. ¶ 46.)

The Decedent became unconscious, allegedly "[a]s a direct and proximate result of being subjected to repeated,

14

multiple and sustained 'stun drive' electrical shocks."

(Compl. ¶ 47.)  According to Plaintiffs, "Defendants Beck

and Robinson thereafter negligently attempted to administer

cardio-pulmonary resuscitation (CPR) to [the Decedent], to

no avail." (Id. ¶ 48.) Plaintiffs allege that "Defendants Beck

and Robinson's efforts to resuscitate [the Decedent] were

unsuccessful because they had been negligently trained on

what to do should a suspect lose consciousness."  (Id. ¶

49.)

The Decedent was transported to a local hospital.

(Compl. ¶ 50.)  Efforts to revive the Decedent were

unsuccessful, and the Decedent died at approximately

12:36 a.m. on March 18, 2015.  (Id.) Plaintiffs allege that

"[b]ut for Defendants Beck and Robinson's delivery of

15

AO 72A
(Rev.8/8
2)

multiple sustained 'stun drive' electrical shocks, [the Decedent] would not have died." (Id. ¶ 51.)

## B. Procedural Background

On March 14, 2017, Plaintiffs filed this lawsuit. (Compl.) Plaintiffs assert a number of claims, including: (1) a claim for violation of the Decedent's Fourth Amendment rights against Defendant Floyd County, asserted by the Decedent's Estate under 42 U.S.C. § 1983 (id. ¶¶ 52-55); (2) a § 1983 claim for violation of the Decedent's Fourth Amendment rights against Defendants Robinson and Beck, asserted by the Decedent's Estate (id. ¶¶ 56-59); (3) a § 1983 claim for violation of the Decedent's Eighth and Fourteenth Amendment rights against Defendant Floyd County, brought by the Decedent's Estate (id. ¶¶ 60-63); (4)

16

a § 1983 claim for violation of the Decedent's Eighth and Fourteenth Amendment rights against Defendants Beck and Robinson, brought by the Decedent's Estate (id. ¶¶ 64-67); (5) a Georgia wrongful death claim against all Defendants brought by Plaintiffs Ja'Juan Hunter and Amiya Adams (id. ¶¶ 68-75); and (6) a survival action brought under Georgia law by the Decedent's Estate, asserted against all Defendants (id. ¶¶ 76-79).

On May 4, 2017, Defendant Floyd County filed its Motion to Dismiss. (Mot. Dismiss (Docket Entry No. 11).) The briefing process for that Motion is complete, and the Court finds that the matter is ripe for resolution.

17

## III.   Discussion

### A.   § 1983 Claims Against Defendant Floyd County

A municipality or county may be held liable under §

1983 where its "<u>own</u> violations were at issue but not where

only the violations of <u>others</u> were at issue." <u>Los Angeles</u>

<u>Cty., Cal. v. Humphries</u>, 562 U.S. 29, 37 (2010) (emphasis

in original).   Thus, "a plaintiff cannot rely upon the doctrine

of respondeat superior to hold the [municipality or county]

liable." <u>Weiland v. Palm Beach Cty. Sheriff's Office</u>, 792

F.3d 1313, 1328 (11th Cir. 2015).

A county or municipality is liable under § 1983 only

when that county or municipality's official policy causes a

constitutional violation. <u>Grech v. Clayton Cty., Ga.</u>, 335

F.3d 1326, 1329 (11th Cir. 2003).   To establish a policy, a

18

plaintiff may "identify either (1) an officially promulgated [municipal or] county policy or (2) an unofficial custom or practice of the [municipality or] county shown through the repeated acts of a final policymaker for the [municipality or] county." Id.

Plaintiffs allege that Defendant Floyd County is liable because it failed to train its officers concerning the proper use of stun guns and the proper way to perform CPR. "'In limited circumstances, a local government's decision not to train certain employees . . . to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." Weiland, 792 F.3d at 1328 (alteration in original) (quoting Connick v. Thompson, 563 U.S. 51, 61 (2011)). "But '[a] pattern of similar constitutional violations

AO 72A
(Rev.8/8
2)

by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train.'" Id. (alteration in original) (quoting Connick, 531 U.S. at 62).  In limited circumstances, however, allegations "of previous incidents is not required to establish [municipal] policy if the need to train and supervise in a particular area is 'so obvious' that liability attaches for a single incident." Id. at 1329.

Here, Plaintiffs' allegations are insufficient to state a viable § 1983 claim against Defendant Floyd County based on a failure to train.  Plaintiffs' Complaint contains no allegations about a pattern of similar constitutional violations by untrained employees.  Although Plaintiffs allege that Defendant Floyd County was on notice of the need for more

20

training, Plaintiffs fail to state sufficient facts to support that conclusion.   Moreover, the Complaint does not allege sufficient facts to show that the need for training was so obvious that the failure to provide this training "amounts to deliberate indifference." Weiland, 792 F.3d at 1329.  Under those circumstances, Plaintiffs have not alleged a viable § 1983 claim against Defendant Floyd County.   See id. at 1328-29 (finding that a complaint "does not allege a pattern of similar constitutional violations by untrained employees," and noting that, although the complaint "contains the conclusory allegation that the Sheriff's Office was 'on notice' of the need to 'promulgate, implement, and/or oversee' policies pertaining to the 'use of force' appropriate for 'the seizure of mentally ill persons and their transportation to

21

mental health facilities,' no facts are alleged to support that conclusion" (footnote omitted)).

Plaintiffs appear argue that the events giving rise to this lawsuit were two different incidents and constituted a pattern of similar constitutional violations. This is incorrect, as the Court cannot divide the incident giving rise to this lawsuit into two different incidents. Rather, the incident that gave rise to this lawsuit was a single incident in which the individual Defendants attempted to place the Decedent under arrest. See Weiland, 792 F.3d at 1329 (finding that an excessive force claim involving two deputies "arises from a single incident"). "A single incident of a constitutional violation is insufficient to prove a policy or custom even when the incident involves several employees of the

22

municipality." <u>Craig v. Floyd Cty., Ga.</u>, 643 F.3d 1306, 1311

(11th Cir. 2011). In any event, by definition, the events

establishing a "pattern of similar constitutional violations"

must have occurred prior to the incident giving rise to the

Complaint. Further, the fact that the individual officers

named as Defendants in this case, in particular, might have

received unsatisfactory training is not sufficient to establish

liability on the part of Defendant Floyd County. <u>See</u> <u>City of</u>

<u>Canton, Ohio v. Harris</u>, 489 U.S. 378, 390-91 (1989) ("That

a particular officer may be unsatisfactorily trained will not

alone suffice to fasten liability on the city, for the officer's

shortcomings may have resulted from factors other than a

faulty training program."). Plaintiffs thus have not

23

established liability on the part of Defendant Floyd County based on this argument.

The Court also cannot conclude that this case falls within the limited single incident theory for imposing municipal liability discussed in City of Canton, Ohio v. Harris, 489 U.S. 378 (1989). See 489 U.S. at 390 ("But it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be

AO 72A

(Rev.8/8

2)

held liable if it actually causes injury."  (footnotes omitted)).

Notably, the Supreme Court has not found a failure to train

that fell within this "obvious" category,[2] and the United

States Court of Appeals for the Eleventh Circuit has been

reluctant to find such "obvious" categories of failure to train.

See Lewis v. City of West Palm Beach, Fla., 561 F.3d 1288,

1293 (11th Cir. 2009) ("[T]he application of a hobble does

not rise to the level of obviousness reserved for 'a narrow

range of circumstances [where] a violation of federal rights

---

[2]The Supreme Court has observed, "[i]n leaving open in Canton the possibility that a plaintiff might succeed in carrying a failure-to-train claim without showing a pattern of constitutional violations, we simply hypothesized that, in a narrow range of circumstances, a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown, 520 U.S. 397, 409 (1997).

25

may be a highly predictable consequence' of a failure to provide adequate training." (alteration in original) (quoting Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown, 520 U.S. 397, 409 (1997))); Gold v. City of Miami, 151 F.3d 1346, 1352 (11th Cir. 1998) ("Gold's contentions that the police officers were inadequately trained and/or supervised regarding the disorderly conduct statute and the proper response to handcuff complaints fall far short of the kind of obvious need for training that would support a finding of deliberate indifference to constitutional rights on the part of the city." (internal quotation marks and citation omitted)); Young v. City of Augusta, Ga., 59 F.3d 1160, 1171-72 (11th Cir. 1995) (finding that there was no obvious need to train jail employees "to recognize the need to remove a mentally

26

ill inmate to a hospital or to dispense medication as prescribed"). This argument does not help Plaintiff.

In sum, Plaintiff's Complaint fails to state viable § 1983 claims against Defendant Floyd County. The Court therefore grants this portion of Defendant Floyd County's Motion to Dismiss.

## B.   Eighth Amendment Claim

The Court agrees with Defendant Floyd County that Plaintiff's Complaint does not state a viable Eighth Amendment claim. The Eighth Amendment applies only after a prisoner is convicted, and the Fourth Amendment instead governs a claim that law enforcement used excessive force to effect an arrest or seizure. See Plumhoff v. Rickard, 134 S. Ct. 2012, 2020 (2014) ("A claim that law-

27

enforcement officers used excessive force to effect a seizure is governed by the Fourth Amendment's 'reasonableness' standard."); Graham v. Connor, 490 U.S. 386, 398 (1989) ("[T]he less protective Eighth Amendment standard applies only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions." (internal quotation marks and citation omitted)); United States v. Myers, 972 F.2d 1566, 1571 ("It is beyond cavil that the Eighth Amendment applies only after a prisoner is convicted."). The allegations of the Complaint do not indicate that the Decedent was a convicted prisoner, and Plaintiffs therefore cannot assert an Eighth Amendment claim. The Court consequently grants

28

Defendant Floyd County's Motion to Dismiss with respect to

Plaintiffs' Eighth Amendment claim.

## C.    Fourteenth Amendment Claim

Likewise, Plaintiffs' Complaint does not state a viable

Fourteenth Amendment claim. The United States Court of

Appeals for the Eleventh Circuit has noted: "Because 'all

claims that law enforcement officers have used excessive

force–deadly or not–in the course of an arrest, investigatory

stop, or other seizure of a free citizen should be analyzed

under the Fourth Amendment and its reasonableness

standard, . . . we analyze [a plaintiff's] excessive force claim

in the context of the Fourth Amendment only." Reese v.

Herbert, 527 F.3d 1253, 1262 n.11 (11th Cir. 2008) (quoting

Graham, 490 U.S. at 395). Plaintiffs' attempted reliance on

29

substantive due process is unavailing, as the Decedent was not a pretrial detainee.  <u>Stephens v. City of Tarrant</u>, Case No. 2:16-CV-274-KOB, 2017 WL 34829, at *4 (N.D. Ala. Jan. 4, 2017) ("Based on the allegations of [the plaintiff's] Complaint, the alleged excessive force occurred during the process of being apprehended and before the arrest was completed.  The Supreme Court and the Eleventh Circuit have directed courts to analyze such claims under the Fourth Amendment's objective reasonableness standard, and this court will do so.  Accordingly, the Court WILL DISMISS any claims against the City brought under the substantive component of the Due Process Clause of the Fourteenth Amendment." (capitalization in original)). Plaintiffs' Complaint thus does not state a viable Fourteenth

30

Amendment claim, and the Court grants this portion of Defendant Floyd County's Motion to Dismiss.

## D. State Law Claims

### 1. Sovereign Immunity

Defendant Floyd County argues that sovereign immunity bars Plaintiffs' state law claims asserted against it in Counts V and VI. The Georgia Supreme Court has noted:

> The common law doctrine of sovereign immunity, adopted by this state in 1784, protected governments at all levels from unconsented-to legal actions. The doctrine was given constitutional status in 1974, but the state remained absolutely immune from suit until 1983 after voters approved an amendment to the State Constitution waiving the sovereign immunity of the "state or any of its departments and agencies" in actions for which liability insurance protection was provided. In 1991, the constitutional doctrine of

31

> sovereign immunity was amended to extend
> sovereign immunity "to the state and all of its
> departments and agencies," and this immunity is
> to prevail except as specifically provided therein.

Gilbert v. Richardson, 264 Ga. 744, 745-76, 452 S.E.2d

476, 478 (1994) (citations and footnotes omitted). "The

sovereign immunity of the state and its departments and

agencies can only be waived by an Act of the General

Assembly which specifically provides that sovereign

immunity is thereby waived and the extent of such waiver."

Ga. Const. of 1983, Art. I, § 2, ¶ IX(e).    "Sovereign

immunity . . . is not an affirmative defense, going to the

merits of the case, but raises the issue of the trial court's

subject matter jurisdiction to try the case." Dep't of Transp.

v. Dupree, 256 Ga. App. 668, 671, 570 S.E.2d 1, 5 (2002).

"[A]ny waiver [of sovereign immunity] must be established

32

by the party benefit[t]ing from such waiver."   Maxwell v. Cronan, 241 Ga. App. 491, 492, 527 S.E.2d 1, 2 (1999) (citation omitted).   "The doctrine of sovereign immunity also applies to counties."   Russell v. Barrett, 296 Ga. App. 114, 120, 673 S.E.2d 623, 628 (2009).

In 1992, the Georgia General Assembly enacted the Georgia Tort Claims Act (the "GTCA"), which is codified at O.C.G.A. § 50-21-20, et seq. and which waives the State's sovereign immunity for the torts of its officers or employees. Gilbert, 264 Ga. at 747, 452 S.E.2d at 479.   The GTCA, however, "expressly excludes counties from the ambit of this waiver."   Id.; see also O.C.G.A. § 50-21-22(5) (excluding counties from definition of "state" for purposes of GTCA); Currid v. DeKalb State Court Probation Dep't, 285

33

Ga. 184, 188, 674 S.E.2d 894, 897 (2009) ("The waiver of sovereign immunity contained in the [GTCA] does not apply to counties."). Thus, the GTCA does not waive Defendant Floyd County's sovereign immunity.

Admittedly, O.C.G.A. § 33-24-51 waives sovereign immunity for certain claims against counties or municipalities arising from use of insured motor vehicles. O.C.G.A. § 33-24-51. Plaintiffs' claims, however, do not arise from the use of a motor vehicle. Plaintiffs also have not alleged that Defendant Floyd County waived its sovereign immunity by purchasing other insurance. Under those circumstances, Plaintiffs have not met their burden to show that Defendant Floyd County waived its sovereign immunity. The Court therefore grants Defendant Floyd

34

County's Motion to Dismiss as to the claims asserted against Defendant Floyd County in Counts V and VI of Plaintiffs' Complaint.

### 2.   Ante Litem Notice

Defendant Floyd County also argues that Plaintiffs failed to allege that they presented Defendant Floyd County with an ante litem notice. Under O.C.G.A. § 36-33-5, before filing suit, a person with a claim for money damages against a municipality "on account of injuries to person or property" must provide notice to the municipality of the alleged claim within six months of the event upon which the claim is based. O.C.G.A. § 36-33-5. Compliance with O.C.G.A. § 36-33-5 is a condition precedent to bringing a lawsuit. See Fulton v. City of Roswell, 982 F. Supp. 1472, 1475

35

(N.D. Ga. Nov. 7, 1997) (stating that the failure to provide a required ante litem notice is an absolute bar to a claim). Further, a plaintiff must allege compliance with the ante litem statute in his or her complaint.  See Moh v. City of Atlanta, Civil Action File No. 1:10-CV-04058-TWT-AJB, 2011 WL 2579829, at *5 (N.D. Ga. May 20, 2011) ("'Where a complaint fails to allege that such written [ante litem] notice has been given, the Georgia courts have held that the complaint does not state a cause of action against a municipal corporation.'" (quoting Dague v. Riverdale Athletic Ass'n, 99 F.R.D. 325, 327 (N.D. Ga. Sept. 30, 1983))). Because Plaintiffs have not alleged that they complied with the ante litem notice requirements, their state law claims against Defendant Floyd County fail as a matter of law.  The

36

Court therefore grants this portion of Defendant Floyd County's Motion to Dismiss.[3]

## IV. Conclusion

ACCORDINGLY, the Court **GRANTS** Defendant Floyd County's Motion to Dismiss [11], and **DISMISSES** Plaintiffs' claims against Defendant Floyd County. The Court dismisses Plaintiffs' Eighth Amendment, Fourteenth Amendment, and state law claims asserted against Defendant Floyd County **WITH PREJUDICE**. Plaintiffs, however, may be able to re-plead their allegations to state

---

[3]In their response, Plaintiffs argue that the ante litem notice requirement does not apply to Plaintiffs' claims against Defendants Beck and Robinson in their individual capacities. (Br. Supp. Resp. Mot. Dismiss (Docket Entry No. 17-1) at 26.) Defendant Floyd County's Motion to Dismiss does not purport to seek dismissal of any claims against Defendants Beck and Robinson in their individual capacities, and this argument is misplaced.

37

AO 72A
(Rev.8/8

a viable § 1983 Fourth Amendment claim against Defendant

Floyd County, and the Court therefore dismisses Plaintiffs'

Fourth Amendment claim against Defendant Floyd County

**WITHOUT PREJUDICE.**

    IT IS SO ORDERED, this the 3 day of June, 2017.

SENIOR UNITED STATES DISTRICT JUDGE

38