# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ROME DIVISION

| | |
|---|---|
| JACKIE ROBERTS and DELORIS ROBERTS as Co-Administrators of the Estate of Askari Jari Roberts; SUREROME HUNTER, as mother and natural guardian of JA'JUAN HUNTER, a minor; and SHAUNDRIKA ADAMS, as mother and natural guardian of AMIYA ADAMS, a minor, <br><br>Plaintiffs, <br><br>VERSUS <br><br>FLOYD COUNTY, GEORGIA, a political subdivision of the State of Georgia; SGT. GREGORY BECK, individually, and in his capacity as a Sergeant in the Floyd County Police Department; and SGT. BRANDON ROBINSON, individually, and in his capacity as a Sergeant in the Floyd County Police Department, <br><br>Defendants. | CIVIL ACTION FILE NO. <br><br>4:17-CV-00053-HLM |

## AFFIDAVIT OF BRANDON ROBINSON

Personally appeared before the undersigned attesting officer, duly authorized to administer oaths, Brandon Robinson, who, after being duly sworn, deposes and

states as follows:

**1.**

I am over twenty-one years of age, suffer from no legal disabilities and am otherwise competent to make this affidavit. I make this affidavit from my own personal knowledge and for use in behalf of Defendants' Motion for Summary Judgment, and for all other purposes allowed by law. This affidavit covers the material time regarding the above-captioned action.

**2.**

At all material times, I was an officer for the Floyd County Police Department.

**3.**

Attached hereto and made a part hereof as Attachment 1 is a true and correct copy of audio footage recorded by the recording system in my patrol car on March 17, 2015, in relation to the incident involving Plaintiffs' decedent.

**4.**

On March 17, 2015, at 21:30 hours, I was dispatched to 3189 Morton Bend Road in response to a 911 call reporting a domestic altercation. Dispatch informed me that a male was at the residence and appeared to be under the influence of

drugs. While en route I was notified by dispatch the male was "acting a fool" and that his 64 year old father was holding him down until someone arrived. Upon arrival at the location, I heard yelling coming from inside the residence and was met at the front door by the female of the residence, Ella Roberts, who informed me they were inside.

**5.**

When I walked into the residence I saw an elderly male, Plaintiff Jackie Roberts, on top of Askari Roberts (hereinafter "decedent"), on the couch in the living room. Plaintiff Roberts was struggling to hold the decedent down. The decedent was kicking and attempting to free his arms from Plaintiff Roberts.

**6.**

I walked to the couch and grabbed the decedent's left arm in an attempt to handcuff him, but he struggled with me to avoid being handcuffed. I was able to apply one handcuff on his left wrist, but was unable to control his right arm. I stood up and attempted to pull the decedent onto the floor on his stomach in order to gain control of his right arm. Plaintiff Roberts then released the decedent and the decedent attempted to run toward the front door of the residence. Still having control of his left arm, I pulled the decedent toward the television and the decedent

stumbled into it causing the screen to break. I attempted to pull the decedent toward me, only to have him swing at me with his right fist, striking me on the right side of my forehead knocking my hat and sunglasses off of my head. I grabbed the decedent around his upper torso with both arms and we both fell to the ground and landed in front of the front door to the residence. While on the floor, I was able to get on top of the decedent as he was still resisting arrest and trying to fight me while he was lying on his back. I was able to gain control of his left wrist again and put all of my body weight on him in an effort to hold him down. The decedent continued to resist arrest and speak incoherently as I continued to try to hold him down. As I was attempting to gain control of his right arm he rolled against the front door and was able to get into a seated position.

7.

At this time I believed my backup, Officer Beck, was close to the residence, and I placed all of my body weight on the decedent in an attempt to keep him from getting up. Plaintiff Roberts was in the floor trying to help me hold the decedent on the floor. At this time I was able to hear a siren and asked Ella Roberts to open the side door and let Officer Beck inside because we were blocking the front door.

**8.**

Officer Beck entered the residence and I informed him I had the decedent's left hand cuffed but was unable to gain control of his right arm. Officer Beck informed the decedent to get on the floor or he was going to tase him. The decedent continued to resist arrest and attempt to get up off of the floor. Officer Beck drive stunned the decedent on the front portion of his left shoulder. This allowed me to pull the decedent onto his stomach while I still had control of his left arm. The decedent continued to resist arrest by attempting to get up when Officer Beck drive stunned the decedent on the lower portion of his right side. The decedent continued to resist arrest and grabbed Officer Beck's Taser. Officer Beck removed his Taser from the decedent's grasp and placed it on his lower back area. We continued to give the decedent verbal commands and gave the decedent adequate time to comply before Officer Beck activated the Taser again. When Officer Beck activated his Taser, the decedent reached back and grabbed Officer Beck's Taser again. While the decedent was reaching back I was able to gain control of his right arm and place the second handcuff on it. I immediately informed Officer Beck "I got it." Officer Beck turned his Taser off.

**9.**

The decedent continued to kick and mumble incoherently. Officer Beck informed dispatch that the subject was under arrest and to send an ambulance to the residence. At this time, Plaintiff Roberts and Ella Roberts informed us the decedent was on drugs, possibly methamphetamine and cocaine. Even though he was handcuffed, the decedent continued to kick at us and mumble incoherently. Officer Beck stood on the decedent's shoes while I was sitting in the floor beside him with my hand on his back in an effort to keep him from getting up while waiting on EMS to arrive. Officer Beck informed me he would sit beside the decedent and knelt down beside him so I could stand up.

**10.**

At this time the decedent stopped moving and Officer Beck turned the decedent onto his back. We both tried to talk to the decedent and tried to get him to respond to us. I immediately notified dispatch and advised we needed EMS to come in emergency response mode. At this time Officer Beck began CPR while I was holding the decedent's head, attempting to talk to him. The decedent began breathing and moving his tongue around inside his mouth before going unconscious again. Officer Beck began CPR again before I relieved him and

continued CPR.

**11.**

Officer Chad Matthews arrived on scene and applied his AED. I continued CPR while Officer Matthews was applying the AED to the decedent. The AED advised "no shock" so I continued CPR. The AED cycled four times, and each time advised "no shock." Between each cycle Officer Matthews, Officer Beck, and I continued CPR. EMS arrived on the scene and began treating the decedent and transported him to the hospital.

**12.**

I did not use my Taser at all on the decedent. I only used soft hands techniques to try to get control of the decedent and handcuff him.

**13.**

On the date of the incident, I was unit number 20.

FURTHER AFFIANT SAITH NOT.

_____
BRANDON ROBINSON

SWORN TO AND SUBSCRIBED
BEFORE ME THIS 24th DAY
OF October , 2017.

_Shannon D Beutner_
NOTARY PUBLIC
MY COMMISSION EXPIRES: 7-27-2021

**ATTACHMENT 1 TO THIS AFFIDAVIT IS A DVD THAT WILL BE MANUALLY FILED WITH THE COURT**