**EXHIBIT B**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| JACKIE ROBERTS and DELORIS ROBERTS as Co-Administrators of the Estate of Askari Jari Roberts; SUREROME HUNTER, as mother and natural guardian of JA'JUAN HUNTER, a minor; and SHAUNDRIKA ADAMS, as mother and natural guardian of AMIYA ADAMS, a minor, | * * * * * * * * * | |
| Plaintiffs, | * * | CIVIL ACTION FILE NO. |
| VERSUS | * * | 4:17-CV-00053-HLM |
| FLOYD COUNTY, GEORGIA, a political subdivision of the State of Georgia; SGT. GREGORY BECK, individually, and in his capacity as a Sergeant in the Floyd County Police Department; and SGT. BRANDON ROBINSON, individually, and in his capacity as a Sergeant in the Floyd County Police Department, | * * * * * * * * * * * | |
| Defendants. | * | |

## AFFIDAVIT OF GREGORY BECK

Personally appeared before the undersigned attesting officer, duly authorized to administer oaths, Gregory Beck, who, after being duly sworn, deposes and states

1

as follows:

**1.**

I am over twenty-one years of age, suffer from no legal disabilities and am otherwise competent to make this affidavit. I make this affidavit from my own personal knowledge and for use in behalf of Defendants' Motion for Summary Judgment, and for all other purposes allowed by law. This affidavit covers the material time regarding the above-captioned action.

**2.**

At all material times, I was an officer for the Floyd County Police Department.

**3.**

Attached hereto and made a part hereof as Attachment 1 is a true and correct copy of audio footage recorded by the recording system in my patrol car on March 17, 2015, in relation to the incident involving Plaintiffs' decedent.

**4.**

On March 17, 2015, at 21:30 hours, I responded to a fight call at 3189 Morton Bend Road, involving a father and a son. Officer Brandon Robinson responded to the scene with the lights and siren on his patrol car activated, and I

was en-route from the Armuchee area. As I continued to the scene, Officer Robinson requested immediate help. I could tell from Officer Robinson's voice that he was under duress and needed help quickly.

**5.**

I activated the lights and siren on my patrol car and proceeded to the location in emergency mode. When I arrived at the location, I ran to the side door of the residence. There, I saw Officer Robinson, Plaintiff Jackie Roberts and Askari Roberts (hereinafter "decedent") in the corner of the living room. Officer Robinson and Plaintiff Roberts were in a heated fight with the decedent. I ordered the decedent to lie down and stop fighting. Due to the decedent refusing my verbal commands, I removed the cartridge from my X-26 Taser and drive stunned the decedent in the left shoulder, and the decedent went to the floor. The decedent showed superhuman strength and was speaking incoherently throughout the event. The decedent continued to be very combative and repeatedly continued to grab at and attempt to take control of my Taser. I then tased the decedent on the right side of his back in an attempt to stop the decedent's resistance. Before I tased the decedent the second time, I gave the decedent adequate time and opportunity for him to stop fighting and allow Officer Robinson to handcuff him. The decedent

3

continued to resist arrest and fight, and due to his non-compliance and combative behavior, I felt it necessary to drive stun the decedent again. I tased the decedent on his lower right back and he continued to grab at my Taser, but during this attempt, Officer Robinson was able to secure the decedent's right hand and handcuff it. I then stopped using my Taser.

### 6.

The decedent was face down and continued to struggle and resist. The decedent moved his head and opened his mouth in an attempt to bite Officer Robinson. I placed my boot on the decedent's head for 2 to 3 seconds to prevent this attack. The decedent complied, but again began twisting and kicking. I moved to the area of the decedent's feet. The decedent was still combative and kicked me in the left shin and was attempting to kick Officer Robinson. I then stood on the decedent's shoes until he stopped trying to kick us. The decedent finally relaxed enough for me to offer to switch places with Officer Robinson so he could have a break from holding down the decedent.

### 7.

When I placed my hands on the decedent, he felt limp. I turned the decedent over, tapped him on the cheek, tried to shake him, and performed a sternum rub,

but got no response from the decedent. I began CPR and the decedent began to breathe slowly and move his eyes. At this time EMS was notified to speed up their response to the scene. CPR was performed on the decedent until Officer Matthews got to the scene with an AED. Officer Matthews began to use the AED and each time the device advised "no shock." Therefore, Officer Robinson, Officer Matthews, and I continued CPR until EMS arrived.

**8.**

While waiting for EMS, I noticed how profusely the decedent was sweating. He was drenched from head to toe and visibly exhausted. Plaintiff Roberts also requested to be evaluated at the scene by EMS.

**9.**

Other than my use of my Taser, and the soft hands techniques used by Officer Robinson and myself, no other force was used on the decedent.

**10.**

On the date of the incident, I was unit number 26.

FURTHER AFFIANT SAITH NOT.

_____
GREGORY BECK

5

SWORN TO AND SUBSCRIBED
BEFORE ME THIS __26__ DAY
OF __October__, 2017.

_____
NOTARY PUBLIC
MY COMMISSION EXPIRES: 9-14-21

**ATTACHMENT 1 TO THIS AFFIDAVIT IS A DVD THAT WILL BE MANUALLY FILED WITH THE COURT**