IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

_____

| | | |
|---|---|---|
| **JACKIE ROBERTS and DELORIS ROBERTS** as Co-Administrators of the Estate of Askari Jari Roberts; **SUREROME HUNTER,** as mother and natural guardian of **JA'JUAN HUNTER,** a minor; and **SHAUNDRIKA ADAMS,** as mother and natural guardian of **AMIYA ADAMS,** a minor, | * * * * * * * * * * | |
| Plaintiffs, | * * | CIVIL ACTION FILE NO. |
| VERSUS | * * | 4:17-CV-00053-HLM |
| **FLOYD COUNTY, GEORGIA,** a political subdivision of the State of Georgia; **SGT. GREGORY BECK,** individually, and in his capacity as a Sergeant in the Floyd County Police Department; and **SGT. BRANDON ROBINSON,** individually, and in his capacity as a Sergeant in the Floyd County Police Department, | * * * * * * * * * * * * | |
| Defendants. | * | |

### REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

COME NOW Defendants Beck and Robinson, the only Defendants remaining in this action, pursuant to Fed. R. Civ. P. 56, and make this their Reply

Brief in Support of their Motion for Summary Judgment, and respectfully show this Honorable Court the following, to-wit:

## B. Qualified Immunity on Federal Law Claims

Genuine issues of material fact are not created by writing fiction. But, that is exactly what Plaintiffs do in this case. When the record evidence is properly considered in this case, it is clear Defendants are entitled to qualified immunity.

### 1. Constitutional Violation

*a.* In making their argument, Plaintiffs emphasize several times the decedent's small stature. See Doc. 26-1 at 10, 12, 14, 15. Even if that is true, it is irrelevant. Jackie Roberts told GBI Special Agent Glover that the decedent was very strong. He also stated that the Lord had given him strength when he was restraining the decedent and that when the police arrived, he was really worn down. He also said that whatever drugs the decedent was on made him strong as an ox. Jackie Roberts Recording at 7:50 – 10:00. Officer Beck described the decedent as having superhuman strength. Beck Aff. at ¶ 5. Plaintiffs presented no facts to contradict this evidence.

*b.* Plaintiffs try to brush the decedent's violence under the rug. Doc. 26-1 at 11. Prior to the arrival of the officers, the decedent had physically assaulted both

Plaintiff Jackie Roberts and his wife, Ella Roberts. While Plaintiffs try to diminish that by characterizing that as a "simple domestic relations matter," as every police officer knows, there are no "simple" domestic relations matters, and domestic relations calls are some of the most volatile and dangerous calls to which a police officer responds. Nick Breul & Mike Keith, <u>Deadly Calls and Fatal Encounters: Analysis of U.S. law enforcement line of duty deaths when officers responded to dispatched calls for service and conducted enforcement (2010-2014)</u> at 15 (Office of Community Oriented Policing Services, U.S. Department of Justice 2016).[1] In addition, the decedent physically resisted Officer Robinson's attempts to handcuff him. Doc. 26-1 at 13. An officer has the right to use the force necessary to effect the arrest. <u>See</u> <u>Draper v. Reynolds</u>, 369 F.3d 1270, 1278 (11th Cir. 2004) ("It is well settled that the right to make an arrest 'necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.'"); <u>Fils v. City of Aventura</u>, 647 F.3d 1272, 1288 (11th Cir. 2011) ("Officers may use force that is 'necessary in the situation at hand.'").

    c. Plaintiffs assert that Jackie Roberts was able to subdue the decedent

---

[1] This document can be accessed at the following web address: http://www.nleomf.org/assets/pdfs/officer-safety/Primary_Research_Final_11-0_updated_8_31_16.pdf (accessed November 29, 2017).

"simply by standing in front of him, leaning on him and holding his wrists." Doc. 26-1 at 12. But, Plaintiffs conceded that upon his entry into the residence, Officer Robinson observed Plaintiff Roberts on top of the decedent on the couch in the living room <u>struggling</u> to hold the decedent down. See PRDSMF at ¶ 8. Jackie Roberts told GBI Special Agent Glover that he had to hold the decedent very tight and that the decedent was very strong. He also stated that the Lord had given him strength to hold the decedent and that when the police arrived, he was really worn down. He also said that whatever drugs the decedent was on made him strong as an ox.

Plaintiffs also argue the decedent was not offering any resistance. Doc. 26-1 at 12. But, they freely concede the decedent did not cooperate with Officer Robinson's efforts to handcuff him. Doc. 26-1 at 13 (decedent squirmed and resisted efforts to handcuff him and disobeyed Officer Robinson's order to stand up). How is that not resistance? Ella Roberts also told Special Agent Glover that Officer Robinson and the decedent were "wrasslin and tussling and tearing up my furniture." Ella Roberts Recorded Statement at 10:30. That does not indicate a lack of resistance.

    *d.* Plaintiffs make the ridiculous assertion that Officer Robinson[2] was able to subdue the decedent all by himself prior to Officer Beck's arrival. Doc. 26-1 at 12-13. This completely contradicts Officer Robinson's affidavit. Doc. 23-3 at ¶¶ 6-7. It is also inconsistent with the recordings. It is also based on the assertion that when the decedent was taken to the floor, he was lying on his stomach. <u>See</u> PRDSMF at ¶¶ 15, 17, 18, 23, 29, 32. That is not true. Both Plaintiff Jackie Roberts and his current wife Ella Roberts told GBI Special Agent Glover that the decedent was lying on his <u>back</u> when the officer(s) were trying to handcuff him. Jackie Roberts Recorded Statement at 18:05 – 21:30; Ella Roberts Recorded Statement at 13:50. <u>Cf.</u> Statement of Officer Robinson to Officer Beck at 21:55:00 ("Help me get him on his stomach so I can cuff him."); Statement of Officer Beck to Decedent at 21:55:08 ("Get on your stomach or I'm going to tase you.") Thus, not only was the decedent not on his stomach but Officer Robinson's knee could not have been in the decedent's back.

    *e.* Plaintiffs also assert Officer Robinson told Officer Beck he was going to have to tase the decedent. But, the recording nowhere contains a statement from

---

    [2] Plaintiffs erroneously assert Officer Robinson did not have a Taser. <u>See</u> Doc. 26-1 at 13, 16. But that is wrong. Officer Robinson had a Taser, he just did not use it.

Officer Robinson to Officer Beck that "you are going to have to tase him." When Officer Beck entered the residence Officer Robinson told Officer Beck to "help me get him on his stomach so I can cuff him." Recording at 21:55:00. Officer Beck then gave the decedent the command to "get on your stomach or I'm going to tase you." Recording at 21:55:08.

 *f.* Plaintiffs admit the decedent resisted Officer Robinson's efforts to handcuff him.[3] But, at the same time, they assert there was no need for Officer Beck to tase the decedent. However, the decedent's resisting the efforts to handcuff him <u>was</u> the justification for the use of the Taser. "In drive-stun mode, a Taser is 'a pain compliance tool with limited threat reduction.' In other words, because it does not incapacitate an individual, it will not be as effective at ending a struggle, <u>but it can cause an individual to comply with police orders by causing pain</u>." <u>Andrews v. Williams</u>, 2015 U.S. Dist. LEXIS 132015 at *4-*6 (M.D. Ala. Sep. 30, 2015) (emphasis supplied).

 *g.* Plaintiffs have not cured their causation problem. Plaintiffs suggest that the medical examiner's determination that the manner of death was a homicide

---

[3] Although Plaintiffs acknowledge the decedent's failure to comply, they offered no options for getting the decedent handcuffed. Even assuming the decedent was subdued, which he was not, he was not restrained and in custody. He

creates a genuine issue of material fact on the issue of causation. Doc. 26 at ¶ 59. That reads too much into Dr. Darrisaw's opinion. Dr. Darrisaw stated:

> . . . Following the complete autopsy and ancillary studies, <u>his death is ascribed to methamphetamine toxicity. The toxic effects of methamphetamine are independently sufficient to cause his sudden death. The physical altercation and electrical control device deployment are actions of others that were contemporaneous with his death. These circumstances cannot be definitively excluded as contributory to his death while under the influence of methamphetamine; however, neither the physical altercation nor the utilization of the electronic control device, in and of themselves, independently caused his death.</u> In this instance, the manner of death is certified as homicide.

Autopsy Report at 7 (emphasis supplied).

> Two statements are pertinent to the causation issue:
>
> 1. "The toxic effects of methamphetamine are independently sufficient to cause his sudden death."
>
> 2. "[N]either the physical altercation nor the utilization of the electronic control device, in and of themselves, independently caused his death."

<u>Id.</u> Translated into legal parlance, the methamphetamine toxicity was the but-for cause of the decedent's death, because without it, the decedent's death would not have occurred. The physical altercation and/or the use of the Taser were not the but-for cause(s) of the decedent's death, because without them, it cannot be said

---

still needed to be handcuffed in order for the arrest to be completed.

the decedent still would not have died. Dr. Darrisaw could not definitively exclude the physical altercation or the use of the Taser as contributory to the decedent's death. But, Plaintiffs have not presented any evidence establishing any such link. Plaintiffs also have not presented any evidence showing that using a Taser in drive-stun mode can result in death or can even cause someone to lose consciousness. All they rely on is speculation, which is insufficient to create a genuine issue of material fact.

Plaintiffs also state that "[a]bsent a toxicology report, it cannot be determined what, if any, role methamphetamine played in the decedent's death." Id. That is incorrect because the toxic effects of the methamphetamine alone were sufficient to cause the decedent's death. In addition, methamphetamine toxicity was listed as the immediate cause of death on the decedent's death certificate. See Doc. 23-9. Since Plaintiffs have failed to make a sufficient showing on an essential element with respect to which they have the burden of proof, causation, summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

### 2. Clearly Established Law

Plaintiffs have not refuted the statement that "[t]here is no reported Eleventh Circuit case which considered the use of a Taser in only drive-stun mode. All of

the Eleventh Circuit's published decisions involved probe mode, a significantly more intrusive and painful experience." Andrews v. Williams, 2015 U.S. Dist. LEXIS 132015 at *16 (M.D. Ala. Sep. 30, 2015). Accordingly, the cases relied on by Plaintiffs as clearly establishing the law, Oliver v. Fiorino, 586 F.3d 898 (11th Cir. 2009) and Fils v. City of Aventura, 647 F.3d 1272 (11th Cir. 2011), could not have clearly established the law for purposes of this case since they involved uses of the Taser in prong mode. Accordingly, there are no cases with materially similar facts that clearly established that the Officers' conduct was unconstitutional.

In addition, given Plaintiffs' insoluble causation problem, they simply cannot show that it was clearly established as a matter of obvious clarity that Defendants' conduct was unconstitutional since Plaintiffs cannot even establish a causal link between Defendants' actions and the decedent's death.

In short, Plaintiffs have not shown that Defendants violated clearly established law.

**B. State Law Claims.**

**1. Official Immunity**

Plaintiffs' argument against Defendants' entitlement to official immunity is that, since there was no reason to tase the decedent, tasing him was done with

actual malice. Doc. 26-1 at 20-22. But, that is wrong. Actual malice is not shown by unreasonable conduct or by even recklessly illegal conduct. Black v. Wigington, 811 F.3d 1259, 1266 (11th Cir. 2016). The decedent's refusal to cooperate in being handcuffed provided the justification in him being tased in drive-stun mode. That tasing was done to obtain the decedent's compliance and to complete the arrest process. Even assuming the decedent was subdued, which he was not, he was not restrained and his arrest had not been completed. Defendants' behavior did not show a deliberate intention to commit an unlawful act, but, rather, the intent to effect the decedent's arrest. Accordingly, there is no evidence of actual malice. See Vidal v. Leavell, 333 Ga. App. 159 (2015); Selvy v. Morrison, 292 Ga. App. 702 (2008).

### 2. Wrongful Death Claim

By the very definition of homicide as arising from a crime, criminal or other negligence, conduct of an intentional nature that is not criminal nor a breach of reasonable care is excluded from giving rise to a wrongful death action. See O.C.G.A. § 51-4-1(2). Defendants were allowed to use the force necessary to effect the decedent's arrest. Thus, Plaintiffs have not identified any conduct by Defendants that would support a wrongful death action. See Hoyt v. Cooks, 672

WHEREFORE, based upon the above and foregoing, and the entire record in this matter, this Court should enter judgment in favor of Defendants as to all of Plaintiffs' claims.

    RESPECTFULLY SUBMITTED,

    WOMACK, GOTTLIEB & RODHAM, P.C.

    */s/ Ronald R. Womack*
    GEORGIA BAR NO. 773650

    */s/ Steven M. Rodham*
    GEORGIA BAR NO. 611404

109 EAST PATTON AVENUE
P. O. BOX 549
LAFAYETTE, GEORGIA 30728
706/638-2234

    THE HOYT FIRM

    */s/ Wade C. Hoyt, IV*
    GEORGIA BAR NO. 373305

408 E. FIRST STREET
P.O. BOX 5005
ROME, GEORGIA 30162-5005

    ATTORNEYS FOR DEFENDANTS

## CERTIFICATION OF COUNSEL

The undersigned pursuant to this Court's Local Rules hereby certifies that this document has been prepared with Times New Roman 14 point.

THIS 4th DAY OF DECEMBER, 2017.

WOMACK, GOTTLIEB & RODHAM, P.C.

*/s/ Steven M. Rodham*
GEORGIA BAR NO. 611404

P. O. BOX 549
109 EAST PATTON AVENUE
LAFAYETTE, GEORGIA 30728
706/638-2234

OF COUNSEL FOR DEFENDANTS

## **CERTIFICATE OF SERVICE**

THIS IS TO CERTIFY that on December 4, 2017, I electronically filed the foregoing pleading with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

>Christopher P. Twyman, Esq.
>Michael Earl Davis, Esq.

>WOMACK, GOTTLIEB & RODHAM, P.C.

>*/s/ Steven M. Rodham*
>GEORGIA BAR NO. 611404

P. O. BOX 549
LAFAYETTE, GEORGIA 30728
706/638-2234
Email: srodham@wgrlawfirm.com

>OF COUNSEL FOR DEFENDANTS